SANDY CREEK PUBLIC SCHOOLS, SCHOOL DISTRICT NO. 1-C,
APPELLANT, V. ST. PAUL SURPLUS LINES INSURANCE COMPANY,
APPELLEE.

384 N.W.2d 279

Filed April 4, 1986.   No. 85-003.

Robert F. Bartle of Nelson & Harding, for appellant.

Steven D. O'Brien of Knudsen, Berkheimer, Richardson & Endacott, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.
Plaintiff-appellant, Sandy Creek Public Schools, school district No. 1-C (Sandy Creek), a Nebraska Class III school district, sought a declaratory judgment against defendant-appellee, St. Paul Surplus Lines Insurance Company (St. Paul), under a contract of insurance between the parties. In its petition Sandy Creek sought a declaration that St. Paul "had an obligation to defend and to pay for all losses incurred by Plaintiff [Sandy Creek]," together with all costs and expenses of defending an earlier legal action brought against Sandy Creek. The district court found there was no coverage afforded Sandy Creek under the policy and dismissed the petition. Sandy Creek appeals to this court, requesting that the lower court's decision be reversed and that St. Paul be required to reimburse Sandy Creek for the reasonable legal expenses incurred in defending the earlier case, denominated

*Wilson v. School District No. 1-C*, docket 32, page 222, case No. 9122 (hereinafter the *Wilson* case).

Sandy Creek assigns two errors: "1. The trial court erred in failing to recognize St. Paul's obligation to defend its insured school board members. 2. The trial court erred in determining that the policy of insurance did not provide coverage for the causes of action alleged in the Wilson action." For the reasons set out hereinafter we affirm the action of the trial court.

The underlying law is clear. An insurer is required to undertake the defense of claims asserted against its insured which fall within the coverage of the policy. *Gottula v. Standard Reliance Ins. Co.*, 165 Neb. 1, 84 N.W.2d 179 (1957).

The facts of the instant case were presented to the trial court in the form of a "STIPULATION OF FACTS" which shows the following.

St. Paul issued a liability policy to Sandy Creek, agreeing to "pay on behalf of the Insureds all Loss which the Insureds shall be legally obligated to pay for any civil claim or claims first made against them because of a Wrongful Act" and to "reimburse the Educational Entity for all Loss for which the Educational Entity shall be required by law to indemnify the Insureds for any civil claim or claims first made against them because of a Wrongful Act." Under the policy issued, "Insureds" are defined, in part, as "the Educational Entity named in the Declarations and all elected and appointed board members . . . ." The educational entity named in the policy was Sandy Creek.

The relevant exclusions from coverage were set out in the policy as follows:

EXCLUSIONS. The Company [St. Paul] shall not be liable to make payment for Loss in connection with any claim made against the Insureds allegedly based upon or arising out of any one or more of the following:

. . . .

D. claims, demands or actions seeking relief, in any form other than money damages;

E. for fees or expenses relating to claims, demands or actions seeking relief or redress, in any form other than money damages.

The history of the *Wilson* case shows that on April 4, 1984, four individual plaintiffs (each a resident of Clay County, Nebraska, a registered voter, a "patron" of Sandy Creek, and a parent of children attending school in the Sandy Creek school district) filed a petition in the district court for Clay County, Nebraska, against Sandy Creek and six named persons *"INDIVIDUALLY AND AS MEMBERS OF THE BOARD OF EDUCATION OF [SANDY CREEK] . . . ."* This petition set out four causes of action. The first three causes sought various restraining or mandatory court orders either restraining or requiring Sandy Creek, the individual board members, or both, to do or refrain from doing certain acts with regard to a proposed consolidation of certain schools in the district. Those three causes of action obviously sought relief other than money damages and, under the exclusionary clauses of the policy, did not require St. Paul to afford a defense to either Sandy Creek or the board members.

The fourth cause of action alleged that "the actions of the defendant Board of Education of [Sandy Creek] . . . were null, void and illegal" as violating the provisions of Neb. Rev. Stat. §§ 84-1408 to 84-1414 (Reissue 1981) (commonly known as the "open meetings law"). The fourth cause sought a court order determining that certain actions of the school board members were null and void; requiring the board of education to render an accounting of all moneys spent pursuant to the allegedly void acts; restraining the board members from acting pursuant to their allegedly void acts; and an order that "the individual defendants be required to indemnify and reimburse the School District [Sandy Creek] . . . for all sums paid out or distributed on account of the void acts of March 6, 15 and 27, 1984."

On April 5 the *Wilson* plaintiffs filed a motion seeking a temporary injunction enjoining "defendants individually and as members of the Board of Education of [Sandy Creek]" from holding a certain bond election or issuing any bonds or closing any existing, separate schools in the district. A copy of the petition was delivered to St. Paul's agent in Fairfield, Nebraska, on April 9, 1984. On April 12 a hearing was held on the *Wilson* plaintiffs' motion for temporary injunction, and the motion was denied. On April 17 attorneys for Sandy Creek wrote to St.

Paul's Fairfield agent, seeking "written confirmation of your company's acceptance of this firm in defending the [*Wilson*] lawsuit," informing the agent that the *Wilson* plaintiffs' motion for a temporary injunction had been successfully resisted; and informing him that "trial on other causes of action in the petition has been set for May 3." Trial of the *Wilson* case was held on May 3, and at the conclusion of the plaintiffs' evidence, the case was dismissed on defendants' motion. The *Wilson* plaintiffs filed a notice of appeal to this court, which they later dismissed on or about October 1, 1984. On May 23, 1984, St. Paul wrote to the attorneys representing Sandy Creek, informing them that St. Paul had determined there was no coverage under the policy. Sandy Creek filed its amended petition in this case against St. Paul in October of 1984.

The stipulation of facts above referred to summarized the parties' view of the instant case in setting out that

> [a] controversy exists between plaintiff [Sandy Creek] and defendant [St. Paul], by reason of this dispute as to whether defendant had any duty, pursuant to provisions of the attached insurance policy, to defend or provide coverage to plaintiff by reason of the litigation and issues raised in Wilson v. School District No. 1-C.

It is basic to our review to note that there are two separate "Insureds" under the policy in question—the Sandy Creek district itself and the group consisting of individual members of the school board of Sandy Creek. We have already stated that the first three causes of action against Sandy Creek and the individual school board members did not seek money damages against the district or the school board members. An examination of the fourth cause shows that it does not seek money damages or relief of any kind against Sandy Creek. The seven separate paragraphs in the prayer of the fourth cause of action seek relief only against the board of education and request that "the individual defendants be required to indemnify and reimburse the School District . . . ." If this part of the relief, sought pursuant to the fourth cause of action, constitutes a claim for money damages against Sandy Creek, then St. Paul would have the duty to defend Sandy Creek, even though the thrust of the *Wilson* petition sought a remedy in

equity. In *Ogle v. Lincoln Real Estate, Inc.*, 209 Neb. 704, 310 N.W.2d 513 (1981), a suit was brought in equity to cancel a conveyance of real estate from the defendants to the plaintiffs and for damages sustained by plaintiffs on account of the defendants' conduct in the transaction. The trial court granted equitable relief to the Ogles and awarded them damages, stating at 707-08, 310 N.W.2d at 515, " '[W]here a court of equity has properly acquired jurisdiction in a suit for equitable relief, it will make a complete adjudication of all matters properly presented and involved in the case . . . .' " Therefore, if the fourth cause of action seeks "money damages," St. Paul might have the duty to defend the *Wilson* lawsuit on behalf of its insureds who were alleged to owe such money damages.

Sandy Creek asserts that the fourth cause of action claimed money damages, since it requested that the individual board members "indemnify and reimburse" the district. St. Paul disagrees with this construction of the meaning of "money damages," stating at 9 of its brief that "[i]t is elementary that 'damages' must flow from the wrongdoer to the aggrieved or injured party. Under no circumstances would damages have flowed to the Wilson plaintiffs. They simply did not seek compensation for themselves."

Both parties present the definition of "damages" provided in Black's Law Dictionary 351-52 (5th ed. 1979):

A pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another. A sum of money awarded to a person injured by the tort of another.

We disagree with St. Paul's position. Initially, we note that in the *Wilson* case the plaintiffs sought damages for themselves. They did not request that money damages be paid directly to plaintiffs, but prayed that money allegedly illegally spent by the board members be restored to the school district in which they were residents and patrons and in which their children went to school.

Secondly, in the situation presented in the instant case, we construe "money damages" to mean money flowing *from* the

individually insured defendants and not necessarily directly *to* the plaintiffs in that case. As used in an exclusionary definition in an insurance policy, "money damages" means money sued for by a plaintiff which plaintiff prays should be paid by the insured directly to, or for the direct or indirect benefit of, the plaintiff allegedly damaged by actions of the insured. It is sufficient to constitute "money damages," in construing the exclusions in the St. Paul policy, if plaintiffs seek to have an insured pay money either to the plaintiffs or for the benefit of the plaintiffs. In the *Wilson* case, the *Wilson* plaintiffs contended that the individual school board members had committed an actionable wrong, that the wrong resulted in an illegal expenditure of public money, and that the plaintiffs were entitled to have money illegally expended repaid to the district by the school board members. Such a repayment would result in a benefit to plaintiffs, in that the school district would regain moneys and thus improve the district's financial position to the indirect benefit of the *Wilson* plaintiffs. The dispositive question in the case before the court in *Wilson* was whether the individual board members were at risk and could be assessed "money damages."

In the instant case, however, Sandy Creek's petition seeks damages for St. Paul's failure to provide coverage and a defense *to Sandy Creek* alone. No money damages, however that term may be defined, were ever sought from Sandy Creek, and St. Paul was not required, under its policy, to extend coverage or a defense to Sandy Creek.

An entirely different situation may be present, however, as to the individual school board members of Sandy Creek. The *Wilson* plaintiffs sought the return of money which had been spent for purposes which the individual school board members thought appropriate and legal but which the *Wilson* plaintiffs thought inappropriate and illegal. The school board members had not received the moneys themselves, so it was not a question of restoring something that they had wrongly taken. Instead, the individuals were faced with the legal request that they pay, from their own funds, sums which they had authorized and directed be spent for purposes they deemed public. Such a request is one for "money damages" against the

individual members of the school board.

Although the question of the two classes of insureds was not presented directly to the trial court, Sandy Creek directly states the question to this court in its first assignment of error—that the trial court erred in failing to recognize St. Paul's obligation to defend the school board members. This question could be considered as being within the allegations of Sandy Creek's petition against St. Paul, if the positions of Sandy Creek and the individual board members in the *Wilson* case were identical. Those positions were not identical and, indeed, might well have been in direct conflict.

In its brief at 9, Sandy Creek states,

> Each of the board members was exposed to personal liability and had the Wilson plaintiffs received the requested relief, "money damages" may have flowed from the individual school board members to the School District. But the law then requires the District to indemnify its board. Neb. Rev. Stat. §79-4,155 (Reissue 1981).

Sandy Creek then asserts that its statutorily required indemnification of the individual members for the payments made to itself would constitute incurring "money damages" by Sandy Creek.

Whatever the merits of Sandy Creek's reasoning, it is based on an erroneous premise. The law does not *require* Sandy Creek to indemnify its board members. Neb. Rev. Stat. § 79-4,155 (Reissue 1981) provides in part:

> (1) A school district shall have *power to indemnify* any person who was or is a party . . . to any . . . pending . . . action . . . *other than an action by or in the right of the school district*, by reason of the fact that he is or was a school board member . . . *if he acted in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the school district . . . .*

(Emphasis supplied.)

Subsection (4) of § 79-4,155 states in part:

> Any indemnification under subdivisions (1) . . . unless ordered by a court, shall be made by the school district *only as authorized in the specific case upon a*

> *determination that indemnification of the school board member . . . is proper in the circumstances because he has met the applicable standard of conduct set forth in subdivisions* (1) . . . . Such determination shall be made by the school board members by a majority vote of a quorum consisting of school board members who were not parties to such action, suit, or proceeding, or if such a quorum is not obtainable, or, even if obtainable a quorum of disinterested board members so directs, by independent legal counsel in a written opinion.

(Emphasis supplied.)

It is apparent that the district is not *required* to indemnify its school board members. The statute also provides that the school district does not have any power to reimburse its school board members if the action against the members is one "by or in the right of the school district." An examination of the *Wilson* petition shows that the *Wilson* plaintiffs might be presenting a claim in the right of the school district and against the school board members.

Sandy Creek did not plead, nor in any way indicate in its petition, that it was presenting a claim for its school board members or that it was an assignee of any of the individuals' rights. Sandy Creek, therefore, may not successfully pursue a claim for coverage against St. Paul which might have been pursued only by its school board members. Sandy Creek's interest might well have been directly adverse to the interests of its board members. The insurance policy issued by St. Paul to Sandy Creek and its board members was issued pursuant to § 79-4,155(7), which provides:

> A school district shall have power to purchase and maintain insurance on behalf of any person who is or was a school board member, officer, employee, or agent of the school district against any liability asserted against him and incurred by him in any such capacity or arising out of his status as such, whether or not the school district would have the power to indemnify him against such liability under the provisions of this section.

St. Paul did not owe Sandy Creek a defense in the *Wilson* case, because only injunctive relief was sought against Sandy

Creek. The position of the school board members in the *Wilson* case is not before us, but it is clear that the attorneys representing Sandy Creek could not also represent the school board members and be reimbursed by St. Paul for their actions. The action of the trial court in this case dismissing Sandy Creek's petition was correct and is affirmed.

AFFIRMED.